Filed 7/24/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of DONNA and MARK OLIVEREZ. | H040955<br>(Santa Cruz County<br>Super. Ct. No. FL024506) |
| DONNA OLIVEREZ,<br><br>    Appellant,<br><br>        v.<br><br>MARK OLIVEREZ,<br><br>    Respondent. | |

**INTRODUCTION**

Appellant Donna Oliverez (wife) petitioned to dissolve her marriage to respondent Mark Oliverez (husband). The parties purportedly entered a marital settlement agreement (hereafter "the Agreement"), and husband subsequently filed a motion to enforce judgment pursuant to Code of Civil Procedure, § 664.6.[1] The trial court denied the motion, finding the Agreement unenforceable. Thereafter, the case was reassigned to a different trial court judge. After a trial on the merits, the court reconsidered and vacated the first trial judge's finding that the Agreement was unenforceable.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

On appeal, wife contends that the second trial judge erred in reconsidering and vacating the prior ruling of another trial judge. For the reasons stated below, we will reverse and remand.

### FACTUAL AND PROCEDURAL BACKGROUND

The parties were married in 1993 and separated in January 2007. Wife filed the petition for dissolution of marriage on January 19, 2007, and since then, the divorce proceedings have been "contentious" and "highly litigated" by the parties. At least five different judicial officers have made rulings in the underlying proceedings. Each party has been self-represented at various times. Additionally, wife has been represented by two different attorneys and husband has been represented by six different attorneys.

In April 2008, both parties signed the purported marital settlement agreement, which set forth terms determining child custody and spousal and child support. It also stated terms dividing the community assets, obligations, property rights, and other financial rights, interest, and claims. By its terms, the Agreement was intended to achieve a global settlement between the parties and was to be incorporated into the judgment of dissolution of marriage.

On March 26, 2009, husband filed a motion to enter judgment based on the Agreement (§ 664.6). Wife opposed this motion, arguing that the parties "never fully agreed to the terms of the *proposed* settlement agreement." (Italics added.) On December 1, 2010, the Honorable Heather D. Morse denied husband's motion for judgment, ruling "that there was never a ' "meeting of the minds" ' in regards to the purported marital settlement agreement such that it is thus unenforceable."

At some point after the denial of husband's motion for judgment, and for reasons unknown from the record before us, the case was transferred to the Honorable Stephen S. Siegel. After several continuances, the case proceeded to trial, beginning on August 6, 2012. The court trial took 15 days over a period of nine months. As the Agreement had been ruled unenforceable, the parties litigated several issues at trial that

2

had previously been discussed in the Agreement, such as the division of property, assets, obligations, and debts as well as child and spousal support.

On October 28, 2013, Judge Siegel issued a "Tentative Ruling on Court Trial." In the tentative ruling, Judge Siegel stated that he was going to reconsider Judge Morse's ruling that the Agreement was unenforceable. On December 19, 2013, the court issued a formal notice of its intention to reconsider the December 1, 2010 ruling on its own motion, and it afforded the parties an opportunity to brief the issue. Both parties filed additional briefing.

On March 4, 2014, the trial court issued a statement of decision and final judgment, in which the court discussed the prior ruling on husband's motion to enter judgment pursuant to section 664.6. The court stated that the prior ruling denying the motion was "improvident and erroneous. [The prior ruling] was simply not supported by substantial evidence. It was unsupported by any evidence. No witnesses testified and no exhibits were offered or admitted. Of course the court was entitled to consider declarations. However, there was only one relevant declaration submitted. That was [husband's] declaration that he and [wife] and their attorneys had signed the attached [Agreement] and that, by the terms of the [Agreement], the parties agreed that the terms of the [Agreement] were to be incorporated into judgment" The court also found that there was insufficient evidence to support wife's claim that she was under duress, coercion, fraud, or undue influence. Citing *Le Francois v. Goel* (2005) 35 Cal.4th 1094 (*Le Francois*), the trial court stated that it had the "inherent power to reconsider the prior ruling and correct a previous but clearly erroneous ruling" of an interlocutory order. The court thus reconsidered and vacated the prior ruling on the Agreement. In the same order, the court entered the judgment of dissolution, and it incorporated the Agreement into the judgment.

The notice of entry of judgment was served on April 30, 2014. Wife timely appealed the judgment of dissolution.

3

On appeal, wife asserts that the trial court erred in granting reconsideration of the prior ruling, after three years had elapsed, and after the parties had gone through trial. She also contends that Judge Siegel erred in reconsidering and reversing a prior ruling made by a different trial court judge.[2] Husband did not file a respondent's brief on appeal. Thus under California Rules of Court, rule 8.220, this court may decide the appeal on the record, the opening brief, and any oral argument by wife.

A trial court's discretion to reconsider another judge's prior ruling is necessarily narrow and usually only appropriate when the prior judge is unavailable. (*Curtin v. Koskey* (1991) 231 Cal.App.3d 873, 876-878 (*Curtin*).)

Section 1008 governs parties' motions for reconsideration and their renewal of prior motions. It expressly specifies and limits the court's jurisdiction to reconsider a prior ruling or to entertain a renewed motion when such relief is sought by a party. A motion for reconsideration by a party must be filed within "10 days after service upon the party of written notice of the entry of the order" and the motion may be granted only "upon new or different facts, circumstances, or law," which matters must be shown by affidavit as part of the motion. (§ 1008, subd. (a).) Section 1008 governs parties' motions for reconsideration or their renewal of a prior motion "whether the order deciding the previous matter or motion is interim or final." (§ 1008, subd. (e).)

In *Le Francois,* our Supreme Court considered whether, notwithstanding the provisions of section 1008, a trial court may "reconsider interim orders it has already made in the absence of new facts or new law[.]" (*Le Francois, supra,* 35 Cal.4th at

---

[2] Wife additionally contends that the trial court erred in reconsidering the Agreement because a "nunc pro tunc order cannot declare that something was done that was not done." This contention is meritless. The nunc pro tunc doctrine permits a court to correct clerical error, not judicial error. (*In re Candelario* (1970) 3 Cal.3d 702, 705.) As Judge Siegel's ruling sought to correct a judicial error, the nunc pro tunc doctrine does not apply in this instance, and we need not address the issue further.

p. 1101.)  In that case, the defendants brought a renewed motion for summary judgment based on the same grounds as their first motion.  Vacating the prior ruling of the first trial judge, a second trial judge granted the renewed motion for summary judgment.  (*Id.* at p. 1097.)  The Supreme Court reversed on the ground that the defendants did not meet the statutory requirements for a motion for reconsideration.  (*Id.* at p. 1109.)  However, the court interpreted section 1008 "as imposing a limitation on the parties' ability to file repetitive motions, but not on the court's authority to reconsider its prior interim rulings on its own motion."  (*Id.* at p. 1105, fn. omitted.)  Thus, if the statutory requirements under section 1008 are not met, "any action to reconsider a prior interim order must formally begin with the court *on its own motion.*"  (*Id.* at p. 1108.)  Here, the trial court, in its "Tentative Ruling on Court Trial," and later by formal notice, stated that it would reconsider the prior order on the Agreement *on its own motion*.  Thus, although the trial court did not consider any new facts or new law, under *Le Francois,* it had the inherent authority to reconsider a prior interim order.  (*Ibid.*)

However, *Le Francois* did not resolve the question of whether one trial judge may reverse the ruling of another trial judge.  In *Le Francois*, the Supreme Court noted that the "Court of Appeal held that because the motion was transferred [to another judge] *without objection*, plaintiffs could not challenge the propriety of that transfer on appeal."  (*Le Francois, supra,* 35 Cal.4th at p. 1097, fn. 2 (italics added).)  The question of "when and under what circumstances one judge may revisit a ruling of another judge" was thus not on review, and the Supreme Court specifically left open that question.  (*Ibid.*)

Generally, one trial court judge may not reconsider and overrule an interim ruling of another trial judge.  (*Curtin*, *supra*, 231 Cal.App.3d 873; *Ziller Electronics Lab GmbH v. Superior Court* (1988) 206 Cal.App.3d 1222, 1232 (*Ziller*); *Morite of California v. Superior Court* (1993) 19 Cal.App.4th 485, 493.)  "This principle is founded on the inherent difference between a judge and a court and is designed to ensure the orderly administration of justice.  'If the rule were otherwise, it would be only a matter of days

5

until we would have a rule of man rather than a rule of law.  To affirm the action taken in this case would lead directly to forum shopping, since if one judge should deny relief, defendants would try another and another judge until finally they found one who would grant what they were seeking.  Such a procedure would instantly breed lack of confidence in the integrity of the courts.'  [Citation.]"  (*In re Alberto* (2002) 102 Cal.App.4th 421, 427.)  "For one superior court judge, no matter how well intended, even if correct as a matter of law, to nullify a duly made, erroneous ruling of another superior court judge places the second judge in the role of a one-judge appellate court."  (*Ibid.*)

However, there are narrow exceptions to this general rule.  (See *In re Alberto, supra*, 102 Cal.App.4th at p. 430.)  "[W]here the judge who made the initial ruling is unavailable to reconsider the motion, a different judge may entertain the reconsideration motion."  (*Ziller, supra,* 206 Cal.App.3d at p. 1232.)  Another exception is when the facts have changed or when the judge has considered further evidence and law.  (*People v. Riva* (2003) 112 Cal.App.4th 981, 992-993 (*Riva*); *Tilem v. City of Los Angeles* (1983) 142 Cal.App.3d 694, 706.)  Additionally, a second judge may reverse a prior ruling of another judge if the record shows that it was based on inadvertence, mistake, or fraud.  (*Church of Scientology v. Armstrong* (1991) 232 Cal.App.3d 1060, 1069 (*Armstrong*).)  Mere disagreement, as here, with the prior trial judge's ruling, however, is not enough to overturn that ruling.  (*Riva, supra,* at p. 992.)

We first note that the record before us does not contain Judge Morse's original ruling on the Agreement or the hearing transcript or minute order on that ruling.  Nor do we have a full record of the parties' moving papers.[3]  It is unclear whether the documents in our record contains all the evidence and declarations considered by Judge Morse to

---

[3] The documents in this record relating to the December 1, 2010 ruling are wife's "Response and Opposition to Motion to Enter Judgment (CCP § 664.6)" and the "Reply Memorandum of Points and Authorities."  Husband's motion to enter judgment pursuant to section 664.6 is not a part of this record.

6

make her ruling. Thus, we are unable to fully ascertain the reasons for Judge Morse's finding that the Agreement was unenforceable.

In any event, Judge Siegel explained that he decided to reconsider Judge Morse's ruling because there was insufficient evidence to find the Agreement unenforceable. Thus, Judge Siegel's reconsideration was not based on new facts, evidence, or law (see *Riva, supra,* 112 Cal.App.4th at pp. 992-993), nor was there a showing that the original ruling was a result of inadvertence, mistake, or fraud. (*Armstrong*, *supra*, 232 Cal.App.3d at p. 1069.) Furthermore, there was nothing to suggest that Judge Morse was unavailable at the time of the hearing.[4] Accordingly, none of the recognized exceptions to the general rule that one trial judge cannot overrule another trial judge, are applicable in this instance. Rather, it appears that Judge Siegel merely disagreed with Judge Morse's prior decision. Indeed, after conducting his own review of the evidence relating to the motion to enter judgment on the Agreement, Judge Siegel found the prior ruling "clearly erroneous," because there was "no evidence, testimony, exhibit or declaration before the court that might support [Judge Morse's] finding that 'there was never a "meeting of the minds." ' " Furthermore, he found insufficient evidence of wife's claim that she was under duress, coercion, fraud, and undue influence at the time she signed the Agreement. Though Judge Siegel came to a different conclusion based on his review of the evidence, his disagreement with Judge Morse's finding is not enough to overrule the prior decision. (*Riva, supra,* at pp. 992; *In re Alberto*, *supra*, 102 Cal.App.4th at p. 427.) Accordingly, we conclude that Judge Siegel erred in vacating the prior ruling on the Agreement.

---

[4] On the court's own motion, we will take judicial notice of the fact that Judge Heather D. Morse is currently listed as an active judge at the Santa Cruz County Superior Court. (Evid. Code, § 452, subd. (h); see <www.santacruzcourt.org/info/judicial-assignments> (as of Jul. 22, 2015).)

Not only was the decision to overrule the prior ruling erroneous, but it also resulted in prejudice to the wife. Judge Siegel's decision came three years after the original ruling. As a consequence, both parties continued to litigate many of the issues that had been addressed in the Agreement over the course of three years, conducted a 15-day trial, and expended considerable time and resources. The parties did so in reliance of Judge Morse's original ruling that the terms of the Agreement were unenforceable. This reliance was reasonable. (Cf. *Greene v. State Farm Fire & Casualty Co.* (1990) 224 Cal.App.3d 1583, 1592. We find that under the circumstances of this case, once the court had determined that the Agreement was unenforceable, wife had the right to believe the ruling was definitive. It follows that the reconsideration of the prior ruling on the Agreement resulted in unfairness to the wife.

## DISPOSITION

The judgment is reversed and remanded.

_____
                      RUSHING, P.J.

WE CONCUR:

_____
     ELIA, J.

_____
     WALSH, J.[*]

*Oliverez v. Oliverez*
**H039750**

---

[*] Judge of the Santa Clara County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:                                    Santa Cruz County Superior Court
                                                Superior Court No.:  FL024506


Trial Judge:                                    The Honorable
                                                Stephen S. Siegel


Attorneys for Appellant                         Law Office of Howard L. Hibbard
Donna Olivarez:                                 Howard L. Hibbard


No appearance for Respondent


*Olivarez v. Olivarez*
**H040955**