Filed 10/20/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| PAUL BLANCO'S GOOD CAR COMPANY AUTO GROUP et al., <br><br>    Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF ALAMEDA COUNTY, <br><br>    Respondent; <br><br><br> THE PEOPLE, <br><br>    Real Party in Interest. | A159623 <br><br> (Alameda County Super. Ct. No. RG19036081) |

Petitioners are several corporations (Entity Defendants) who seek writ relief from a trial court order striking their unverified answer to the civil complaint of the People of the State of California (People). In granting their request for a peremptory writ, we decide two issues of first impression.

The first issue pertains to Code of Civil Procedure section 446, subdivision (a), which provides that an answer to a civil complaint filed by certain government entities must be verified "unless an admission of the truth of the complaint might subject the party to a criminal prosecution."[1]

---

[1]    All statutory references herein are to the Code of Civil Procedure.

1

The question is whether this exception to the verification requirement applies to a corporation, who can be "subject . . . to a criminal prosecution" but cannot invoke the privilege against self-incrimination under the Fifth Amendment to the United States Constitution. Given the plain meaning of the statutory language, we conclude that the exception applies to corporations.

The second issue relates to section 431.30, subdivision (d), which requires a defendant to answer each material allegation of a verified complaint with specific admissions or denials, but allows a defendant to file a general denial if the complaint is not verified. The question is whether an unverified complaint filed by the People is deemed verified, such that a general denial is insufficient. Given the statutory language, we conclude that the Entity Defendants may file a general denial.

We also take the opportunity to clarify for trial courts that an order to show cause, unlike an alternative writ, does not invite the trial court to change the order challenged by the writ petition. In addition, we reiterate that a judge of the superior court generally may not overturn the order of another judge unless the record shows the other judge is unavailable.

## I. <u>FACTS AND PROCEDURAL HISTORY</u>

In September 2019, the People filed an unverified complaint against the Entity Defendants and one of their principals, Paul Blanco, asserting claims for unfair practices in violation of Business and Professions Code section 17200 and false advertising in violation of Business and Professions Code section 17500. The complaint alleged that the defendants perpetrated a number of fraudulent, wrongful and unlawful activities that could be construed to give rise to potential criminal liability, including claims brought under Business and Professions Code section 7500, which imposes criminal penalties for false advertising.

2

In December 2019, the Entity Defendants and Blanco filed an unverified "Defendants' Answer to Complaint" in the form of a general denial of the complaint's allegations with affirmative defenses. In a footnote, the defendants asserted that section 446, subdivision (a) "authorizes the filing of an unverified answer."

The People filed a motion to strike the answer as to the Entity Defendants on two grounds. First, the People urged that section 446, subdivision (a) required a verified answer, because corporations, unlike natural persons, are not entitled to assert the Fifth Amendment privilege against self-incrimination. Second, the answer contained only a general denial of the complaint's allegations, whereas section 431.30, subdivision (d) required a specific denial of each allegation.

The Entity Defendants filed an opposition to the motion, contending the literal meaning of section 446 entitled them to file an unverified answer because verifying their answer might subject them to criminal prosecution, and a general denial was sufficient because the People's complaint was not verified. The People filed a reply brief.

A. February 2020 Order

After a hearing, Judge Michael M. Markman entered an order on February 5, 2020, striking the answer as to the Entity Defendants (February 2020 Order), on the grounds that they failed to verify the answer as required by section 446 and asserted only a general denial in contravention of section 431.30, subdivision (d). As to the verification issue, the court concluded that the exception to the verification requirement in section 446, subdivision (a) was coextensive with the Fifth Amendment privilege against

3

self-incrimination, and because a corporation may not invoke that privilege, the exception to verification did not apply. The court granted the Entity Defendants leave to amend their answer.

B. The Entity Defendants' Petition for Writ Relief

On February 20, 2020, the Entity Defendants filed a petition in this court for extraordinary writ relief from the February 2020 Order, urging that the Entity Defendants could avail themselves of the exception to the verification requirement and file an unverified answer, and they could file a general denial since the People's complaint was not verified. They further alleged that they had no adequate remedy at law and would suffer immediate and irreparable harm if writ relief were not granted.

On February 24, 2020, we stayed the February 2020 Order's requirement that a verified answer be filed and directed that opposition to the writ petition be filed within 15 days. The People filed an opposition to the petition on March 9, 2020. The Entity Defendants filed a reply brief on March 23, 2020.

On April 28, 2020, we issued an order to show cause as follows: "IT IS ORDERED that respondent superior court show cause before this court, when the matter is ordered on calendar, why the relief requested in the petition should not be granted."

On May 13, 2020, the trial court issued an order noting that the case had been assigned "from Department 16 [Judge Markman] to Department 25 [Judge James Reilly]" and setting a hearing in response to our order to show cause, "to allow [the People] to present oral argument on why this Court should not vacate its February 5, 2020 order granting [the People's] motion to strike, and enter a new order denying the motion." The order continued: "[b]ecause the Court is considering changing its February 5, 2020 order, it

4

therefore gives the parties notice and an opportunity to be heard. (See, e.g. _Brown, Winfield & Canzoneri, Inc. v. Superior Court_ (2010) 47 Cal.4th 1233, 1250, fn. 10 ['if a trial court is considering changing an interim order in response to an alternative writ, it must give the respective parties notice and an opportunity to be heard'].)"[2]

On May 15, 2020, we received a "Stipulated Joint Application for Extension of Time for Real Party in Interest to File Return etc.," in which the People sought a 30-day extension of time to file a return to the petition. The application was supported by a declaration from Hunter Landerholm, an attorney for the People, averring that the People needed more time to brief the issues. The Landerholm Declaration also informed us about the May 13, 2020 order, which indicated the court was considering changing its February 2020 Order and had set a hearing for May 22, 2020 to allow the People to present oral argument on why the order should not be vacated.

We granted an extension of time for the People to file their return. On May 18, 2020, we issued an order explaining that the extension was granted "due to real party in interest's stated need for additional time to fully brief the issues" and "was not granted in contemplation of the superior court changing the order under review or any potential issue of mootness arising therefrom." We further stated: "The Landerholm Declaration accompanying the stipulated application indicates the superior court is considering changing the order under review in response to this court's order to show cause, even though that order did not contain language inviting the court to reconsider its ruling. [Citations.]" Our order added: "In the event respondent superior court changes its ruling, the parties are ordered to

---

[2] _Brown, Winfield & Canzoneri, Inc._ did not involve a situation where, as here, the court of appeal had issued an order to show cause.

5

immediately notify this court, which will likely require briefing on the validity of the superior court's action and whether the petition should be retained for decision notwithstanding any question of mootness."

### C. Trial Court's May 2020 Order

The hearing before Judge Reilly went forward on May 22, 2020. After the hearing, Judge Reilly issued a new order of that same date, reversing the February 2020 Order that Judge Markman had issued (May 2020 Order).

The May 2020 Order confirmed that on April 24, 2020—while the Entity Defendants' writ petition was pending in this court, but before we had issued our order to show cause—the case was "reassigned from Department 16 to Department 25." The order did not disclose any reason for the reassignment or whether Judge Markman was unavailable. It also reiterated that the May 22 hearing was held "to allow [the People] to present oral argument on why [the] court should not vacate its February 5, 2020 order . . . and enter a new order denying the motion."

The May 2020 Order explained that Judge Reilly was vacating Judge Markman's February 2020 Order because, contrary to what Judge Markman had decided, the plain language of section 446, subdivision (a) meant the Entity Defendants did not need to verify their answer. The order then denied the People's motion to strike the Entity Defendants' answer.

### D. Ensuing Developments in This Writ Proceeding

We were advised of the superior court's May 2020 Order on May 26, 2020. On May 27, 2020, we ordered the parties to address the following topics, in addition to briefing the petition's merits: (1) is the May 2020 Order valid, given that this court issued an order to show cause (OSC) to review the February 2020 Order, and the OSC did not contain language inviting the trial court to reconsider its ruling; did our creation of a "cause" and

6

assumption of jurisdiction over the petition divest the superior court of the ability to change the February 2020 Order; and do any reported cases resolve or provide guidance on that question; (2) is the May 2020 Order valid, since Judge Reilly vacated and overruled the February 2020 Order issued by a different judge of the same court; and (3) assuming the May 2020 Order is valid, should the petition be retained for decision notwithstanding any question of mootness. The People filed their return and the Entity Defendants filed their reply, addressing the issues with arguments we describe *post*.

## II. DISCUSSION

The Entity Defendants' petition challenges the superior court's February 2020 Order in two respects—whether the Entity Defendants must verify their answer under section 446, and whether they may file a general denial under section 431.30, subdivision (d). But first we must consider the impact of the court's May 2020 Order.[3]

### A. Validity and Effect of the May 2020 Order

As we advised the parties during briefing, two questions arise as to the validity of the May 2020 Order: it was issued after our OSC, and a second judge overruled the first judge's ruling. If either fact renders the May 2020

---

[3]     Our issuance of the OSC established that the prerequisites for writ review, including the absence of another adequate remedy, have been met. (*Robbins v. Superior Court* (1985) 38 Cal.3d 199, 205; *Pacific etc. Conference of United Methodist Church v. Superior Court* (1978) 82 Cal.App.3d 72, 80; *Cox v. Superior Court* (2016) 1 Cal.App.5th 855, 858.) Requiring a corporation to choose to either verify its answer and subject itself to criminal prosecution, or not verify its answer and be the subject of a default, sufficiently articulates irreparable harm for purposes of writ review. Further, the interpretation of section 446 presents a novel issue of "significant legal impact" that might escape review absent our intervention by extraordinary writ. (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 851.)

7

Order invalid, the February 2020 Order stands and we proceed to the merits of the petition. If the May 2020 Order is valid, the February 2020 Order has been reversed and we must decide whether the petition is now moot.

### 1. Issuance of the May 2020 Order After Our OSC

Our initial inquiry is whether the trial court had jurisdiction to issue the May 2020 Order even though the petition had been filed and we had entered our OSC, which directed the trial court merely to "show cause before this court, when the matter is ordered on calendar, why the relief requested in the petition should not be granted." The parties contend our OSC did not divest the trial court of jurisdiction. While we agree, we do so with guidance to trial courts as to an OSC's significance.

As a general rule, trial courts have inherent jurisdiction to reconsider, vacate, or otherwise modify their interim orders. (*Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 768; *LeFrancois v. Goel* (2005) 35 Cal.4th 1094, 1106–1107.)

If an *appeal* from the court's order is perfected, by statute the trial court generally loses subject matter jurisdiction over any matter affected by the appeal. (§ 916, subd. (a); *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 196–197.) This automatic stay provision does not, however, apply to writ proceedings. (*In re Brandy R.* (2007) 150 Cal.App.4th 607, 609–610.) Statutes governing petitions for writs of mandate contain no analogous automatic stay provision. (§§ 1084–1097.) Although certain types of rulings are stayed (e.g., § 405.35 [lis pendens], Pen. Code, § 1424, subd. (a)(1) [disqualification of district attorney]), the parties have not pointed to any statute imposing an automatic stay of the type of ruling challenged here.

8

While the filing of a writ petition did not end the trial court's jurisdiction in this case, we must next consider whether *our* act of issuing an OSC deprived the trial court of authority to reconsider its ruling. With our OSC, we assumed jurisdiction over the petition, and "the matter bec[a]me a 'cause' which is placed on the court's calendar for argument and which must be decided 'in writing with reasons stated.' " (*People v. Medina* (1972) 6 Cal.3d 484, 490; see *Kowis v. Howard* (1992) 3 Cal.4th 888, 897 [indicating decision of a "cause" involves the court "tak[ing] jurisdiction over the case"]; *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177–178.)

No authority has been cited, and we are unaware of any, precluding a trial court from changing the order under review merely because the appellate court has issued an OSC. Given a superior court's continuing jurisdiction over its interim orders, we conclude that the issuance of an OSC in this mandate proceeding did not eliminate the trial court's power to reconsider its ruling.[4] Therefore, the trial court in this case did not lack the power to vacate and reverse the February 2020 Order that is the subject of the Entity Defendants' writ petition.

That said, it would have been preferable for respondent trial court to keep its February 2020 order in place after we issued our OSC directed to that order. To avoid future trial court confusion in this regard, it may be beneficial to emphasize the difference between an OSC and an alternative writ.[5]

---

[4] This case did not involve a situation where we explicitly ordered the trial court not to change its order. While we stayed the portion of the February 2020 order requiring the filing of a verified amended answer, we did not stay further trial court proceedings or the entirety of that order.

[5] Other dispositional options available in writ proceedings are not before us and are beyond the scope of this opinion. (See *Lewis v. Superior Court*

9

An alternative writ of mandate requires the respondent to perform an act (e.g., change its order) *or* to show cause why it has not done so. (Code Civ. Proc., § 1087.) By contrast, an OSC directs no act by respondent; instead, the OSC requires respondent only to show cause why it should not be required to perform an act. Thus, an OSC, such as the one issued here, does not invite the trial court to change the ruling under review.

In our view, while a trial court retains power to change an order embraced by an appellate court's OSC, it should avoid doing so. Appellate courts carefully choose between the alternative writ and OSC procedures, cognizant of the difference between the two. Among other considerations, "if the appellate court desires further briefing but wants to avoid the possibility of superior court compliance with an alternative writ, or if the court simply wants to hear oral argument on the matters raised, it might instead issue an *order to show cause* . . . . (Some appellate courts *never* issue alternative writs in order to avoid unwanted compliance.)" (Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 2020) ¶ 15:157.5, original italics.) Here, given that the petition raised a question of first impression appropriate for resolution in a published opinion, we deliberately chose to issue an OSC instead of an alternative writ, since the latter procedure would have permitted reversal of the challenged order with the undesirable result of potentially rendering the issue moot. (*Last Frontier Healthcare Dist. v. Superior Court* (2019) 33 Cal.App.5th 492, 495, fn. 3.) Going forward, trial courts receiving an order from an appellate court should observe the distinction between an alternative writ and an OSC.

_____

(1999) 19 Cal.4th 1232, 1239–1240; *Brown, Winfield, & Canzoneri, Inc., supra,* 47 Cal.4th 1233.)

## 2. May 2020 Order by Different Judge

Although the trial court had jurisdiction to issue the May 2020 Order, we next must decide whether the order is invalid because it was issued by Judge Reilly rather than by Judge Markman, who issued the February 2020 Order. The People argue that for this reason the May 2020 Order is invalid; the Entity Defendants claim the order is valid.

As a general rule, a trial judge cannot overturn the order of another trial judge. (E.g., *In re Marriage of Oliverez* (2015) 238 Cal.App.4th 1242, 1248 (*Oliverez*); *Ziller Electronic Lab GmbH v. Superior Court* (1988) 206 Cal.App.3d 1222, 1232 (*Ziller*).) Weighty concerns compel this long-standing principle. (*In re Alberto* (2002) 102 Cal.App.4th 421, 426–431 (*Alberto*).) Fundamentally, it "is founded on the inherent difference between a judge and a court and is designed to ensure the orderly administration of justice." (*Id.* at p. 427.) Because a superior court is a single entity comprised of member judges, " 'one member of that court cannot sit in review on the actions of another member of that same court.' " (*Id.* at pp. 427–428.) "For one superior court judge, no matter how well intended, even if correct as a matter of law, to nullify a duly made, erroneous ruling of another superior court judge places the second judge in the role of a one-judge appellate court," and " 'it would be only a matter of days until we would have a rule of man rather than a rule of law.' " (*Id.* at p. 427.) Furthermore, to countenance such a practice would lead to judge-shopping—venturing from judge to judge until a favorable ruling is obtained—which " 'would instantly breed lack of confidence in the integrity of the courts.' " (*Ibid.*)

Similarly, the rule against one trial judge overruling another reflects an understood notion of "comity" among jurists on the trial court, which "imposes limitations on one judge's authority when another judge has already

11

acted." (*Alberto, supra*, 102 Cal.App.4th at p. 426; see *Ziller, supra*, 206 Cal.App.3d at p. 1232.)  The rule may also conserve judicial resources and, further still, prevent a judge from interfering with a case ongoing before another judge.  (*People v. Riva* (2003) 112 Cal.App.4th 981, 991 (*Riva*), overruled on another ground in *People v. Anderson* (2020) 9 Cal.5th 946, 956.)  Put simply, the superior court's jurisdiction to reconsider its rulings is generally to be exercised by the judge who made the original order.  (*Ziller, supra*, 206 Cal.App.3d at p. 1232 [second judge should direct the moving party to the judge who ruled on the first motion].)

A narrow exception to this venerable rule applies when the record shows that the original judge is no longer "available."  (*Davcon, Inc. v. Roberts & Morgan* (2003) 110 Cal.App.4th 1355, 1361; *Ziller, supra*, 206 Cal.App.3d at p. 1232 [unavailability exception "reconciles the jurisdiction of a trial court to reconsider and correct its erroneous interim rulings to achieve justice [citation] with the general rule's recognition of the comity between judges of a trial court"].)  The unavailability of the original judge is established if, for example, the judge has retired.  (*Williamson v. Mazda Motor of America, Inc.* (2012) 212 Cal.App.4th 449, 455.)  Unavailability is not demonstrated, however, by the mere fact that the original judge was transferred to another department of the same court.  (*Oliverez, supra*, 238 Cal.App.4th at pp. 1248–1249; *In re Marriage of Furie* (2017) 16 Cal.App.5th 816, 831 fn. 10.)

Here, the record does not show that Judge Markman was unavailable when Judge Reilly heard the matter and issued his ruling in May 2020.  The record indicates that the case was transferred to Judge Reilly's department, but it does not explain why or describe Judge Markman's status.  Indeed, Judge Markman remains listed as a judge on the superior court's website.

(See *Oliverez, supra*, 238 Cal.App.4th at pp. 1245, 1248–1249 & fn. 4 [order of second judge reversed where the case had been transferred to that judge for "reasons unknown from the record," and the court of appeal took judicial notice that the original judge remained listed as an active judge on the superior court's website].)[6]

The Entity Defendants urge that the circumstances of Judge Reilly's ruling nonetheless justify his overruling Judge Markman. They refer us to language in *Riva* that "[f]actors to consider" in deciding if there is a "highly persuasive reason" for reversing or modifying another trial judge's ruling include "whether the party seeking reconsideration of the order has *sought relief by way of appeal or writ petition*, whether there has been a change in circumstances since the previous order was made and whether the previous order is reasonably supportable under applicable statutory or case law regardless of whether the second judge agrees with the first judge's analysis of that law." (*Riva, supra,* 112 Cal.App.4th at pp. 992–993, italics added [noting the openness of the trial judge to reverse her own ruling if convinced she were wrong].)

We must be careful not to read too much into the language quoted from *Riva*. In context, *Riva* does not say that a party's *seeking* relief by appeal or writ petition should justify a second judge to overrule the original judge's challenged order. *Riva* cited in this regard only *People v. Superior Court (Tunch)* (1978) 80 Cal.App.3d 665, 668. (*Riva, supra*, 112 Cal.App.4th at

---

[6]     Courts have also found an exception where the initial ruling was made through inadvertence, mistake, or fraud, or where new facts, evidence, or laws have arisen. (*Oliverez, supra*, 238 Cal. App.4th at pp. 1248–1249.) But here, Judge Reilly simply had a different view of the law, which does not provide an exception to the general rule that one judge cannot overrule another. (*Id.* at p. 1249 ["[m]ere disagreement . . . is not enough"]; *Riva, supra*, 112 Cal.App.4th at p. 992 [to the same effect].)

p. 993 fn. 32.) *Tunch* had nothing to do with one trial judge overruling another, and certainly did not hold that one judge could overrule another judge merely because the original ruling was being challenged in the court of appeal. Rather, in *Tunch*, *this* court issued a peremptory writ of mandate, holding that the trial judge's order was incorrect and remanding for further proceedings. (*Tunch*, *supra*, 80 Cal.App.3d at p. 683.) The point for which *Riva* cited *Tunch* may have simply been that a different judge may make rulings in a case *after* the appellate court has issued its decision and remanded the matter to the trial court with instructions for further proceedings. (See *Riva, supra*, at p. 992 [concluding that pretrial rulings on admissibility of evidence, like rulings on pleadings, should also be reviewable by another judge following a mistrial].)

In the final analysis, the record is simply insufficient in this case to justify deviating from the well-established and good-sense rule that one trial judge cannot overrule another. It would not be a heavy burden for the second judge to explain the unavailability of the original judge, sufficiently to establish a record. Here, no explanation for the transfer was given. Nor was there any "highly persuasive reason" advanced for Judge Reilly to vacate Judge Markman's order when a petition for writ review of the order had already been filed; if anything, the pendency of the writ petition and the stay of the critical part of Judge Markman's order diminished any reason for another trial judge to overrule him.

Accordingly, based on the record, Judge Reilly exceeded his authority by issuing the May 2020 Order. Because the May 2020 Order is invalid, the

14

February 2020 Order has not been vacated, and we will proceed to the merits of the petition challenging it.[7]

B. Merits

We are called upon to decide the meaning of certain provisions in section 446 and section 431.30. In doing so, " 'it is well settled that we must look first to the words of the statute, "because they generally provide the most reliable indicator of legislative intent." ' " (*Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 639–640.) The words of the statute are given their plain and commonsense meaning. (*Id.* at p. 640.) If the statutory language is unambiguous, we presume the Legislature meant what it said and our inquiry ends. (*Ibid.*)

1. Verification Requirement (Section 446)

In pertinent part, section 446, subdivision (a) reads as follows: "When the state, any county thereof, city, school district, district, public agency, or public corporation, or any officer of the state, or of any county thereof, city, school district, district, public agency, or public corporation, in his or her official capacity is plaintiff, *the answer shall be verified, unless an admission of the truth of the complaint might subject the party to a criminal*

---

[7]      If the May 2020 Order were *valid*, the reversal of the February 2020 Order might render the petition moot. In that event, we would still exercise our discretion to decide the petition on the merits. (E.g., *Last Frontier Healthcare Dist. v. Superior Court, supra,* 33 Cal.App.5th at p. 495 fn. 3.) Although the May 2020 Order vacated the February 2020 Order, it discussed only one of the issues on which the original order was based (whether petitioners' answer to the complaint must be verified). As to that issue, two judges of the same trial court reached opposite interpretations of the statute. The issues raised by the petition present questions of first impression, could arise again in this case if the People filed an amended complaint, and could arise in other cases in which a government entity files a civil complaint against a corporation.

15

*prosecution*, or, unless a county thereof, city, school district, district, public agency, or public corporation, or an officer of the state, or of any county, city, school district, district, public agency, or public corporation, in his or her official capacity, is defendant. *When the complaint is verified, the answer shall be verified.* In all cases of a verification of a pleading, the affidavit of the *party* shall state that the same is true of his own knowledge, except as to matters which are therein stated on his or her information or belief, and as to those matters that he or she believes it to be true; and where a pleading is verified, it shall be by the affidavit of a *party*, unless the parties are absent from the county where the attorney has his or her office, or from some cause unable to verify it, or the facts are within the knowledge of his or her attorney or other person verifying the same . . . [¶] *When a corporation is a party, the verification may be made by any officer thereof.*" (Italics added.)

Thus, under section 446, subdivision (a), an answer to a complaint generally must be verified in two situations: (1) a governmental entity or officer is the plaintiff, unless verification might subject "the party" to a criminal prosecution; or (2) the complaint itself is verified. In addition, the statute tells us, verification by a "party" that is a corporation may be accomplished by a corporate officer.

The question is whether the phrase, "unless an admission of the truth of the complaint might subject *the party* to a criminal prosecution" applies to a corporate defendant. The plain language of section 446, subdivision (a) is clear that it does. Obviously, a corporate defendant can be a "party," just as the Entity Defendants are here. Furthermore, the subdivision in which the verification requirements reside explicitly confirms that a corporation may be a "party" for purposes of the statute. Therefore, if the admission of the truth

16

of the complaint might subject a corporation (like the Entity Defendants) to criminal prosecution, the corporation does not have to verify its answer.

The heart of the People's argument to the contrary—and the basis for the superior court's February 2020 Order—is that the phrase "subject the party to a criminal prosecution" was intended to be coextensive with the privilege against self-incrimination. The privilege against self-incrimination now applies only to natural individuals and cannot be claimed by a corporation. (E.g., *DeCamp v. First Kensington Corp* (1978) 83 Cal.App.3d 268, 282 (*DeCamp*); *United States v. 3963 Bottles* (7th Cir. 1959) 265 F.2d 332, 335–336.) Ergo, the People deduce, section 446 implicitly disqualifies a corporation from being a "party" that can file an unverified answer, even if verification might subject it to criminal prosecution.

There are two glaring problems with the People's argument. First, section 446 does not mention the privilege against self-incrimination. It employs a different phrase, referring to a situation where verification "might subject the party to a criminal prosecution." Second, section 446 explicitly states that a "party" *can* be a corporation. Given the clarity of the Legislative intent from the plain meaning of the statutory language, the People's premise of an unexpressed legislative intention is unavailing. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 75 [" 'This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed.' "]; *California Teachers Assn. v. Governing Board of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 ["It cannot be too often repeated that due respect for the political branches of our government requires us to interpret the laws in accordance with the expressed intention of the Legislature."].) Nonetheless, we consider each of the People's arguments.

17

### a. *DeCamp*

A subject of great dispute between the litigants (and in the trial court) is the meaning and reach of *DeCamp, supra,* 83 Cal.App.3d 268—specifically, whether the appellate court in that case identified the statutory language at issue here as coextensive with the privilege against self-incrimination.

In *DeCamp*, a *private* plaintiff had filed a *verified* complaint against an individual defendant and a corporate defendant. The defendants filed a general denial signed by their lawyer, explaining that to file a verified answer to portions of the complaint would violate the defendants' rights under the Fifth and Fourteenth Amendments of the United States Constitution. (*DeCamp, supra,* 83 Cal.App.3d at p. 271.) The trial court granted plaintiff's motion to strike the defendants' unverified answer, entered a default against them, and ultimately entered judgment. (*Id.* at pp. 271–272.)

The court of appeal affirmed in part and reversed in part. It noted that section 446 originally provided that an answer would have to be verified if the complaint was verified or the state or its officer was the plaintiff, but an exception would apply in *either* instance if an admission of the truth of the complaint might subject the party to a criminal prosecution or the defendant was an officer of the state. (*DeCamp, supra*, 83 Cal.App.3d at pp. 275–276.) The court further observed that a 1933 amendment limited the "self-incrimination exception" to when the plaintiff was a state or other specified government entity. (*Id.* at p. 276.) The court held that in the instance before it—where the complaint was *not* brought by a government entity but was actually verified—there was no longer any such exception to the verification requirement and the individual and corporate defendants had to provide a verified answer even if it was incriminatory. (*Ibid.*) The court

18

added that the individual would then receive immunity against any use of his answer in a prosecution because his answer was compelled, but the corporation would not receive such immunity because a corporation cannot invoke the privilege. (*Id.* at p. 280.)

*DeCamp* is distinguishable from the matter at hand. The court in *DeCamp* did *not* rule that the phrase at issue here—"might subject the party to a criminal prosecution"—is coextensive with the privilege against self-incrimination. It merely used the words "self-incrimination exception" as a shorthand way of referencing a provision that was irrelevant to the case. It alluded to "self-incrimination" because the parties had framed the case in terms of the self-incrimination privilege, not because the court had actually scrutinized the language of the phrase. Nor did the court cite any precedent, legislative history, or other basis for concluding whether the phrase at issue here applies to a corporation. Indeed, the court in *DeCamp* had no occasion to examine the meaning of the phrase since, unlike here, the complaint had been filed by a private party rather than the government. An opinion is not authority for a proposition the court had no occasion to decide. (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524 fn.2.)

### b. Should "Party" Be Read to Mean Natural "Person"

According to the People, the "most important evidence" that section 446, subdivision (a) "tracks" the constitutional privilege against self-incrimination—and is co-extensive with it—is that the text of the statute purportedly "mirrors" the text of the privileges against self-incrimination. Like section 446, the People argue, the federal and state privileges state that no "person" may be compelled in a criminal case to be a witness against

themselves. (U.S. Const., 5th Amend.; Cal. Const., art. I, § 15.)[8] Although a "person" might seem to encompass both natural and corporate persons, courts have decided that corporations have no constitutional privilege against self-incrimination. (*Braswell v. United States* (1988) 487 U.S. 99, 104–109; *DeCamp, supra*, 83 Cal.App.3d at p. 280.)

The People's argument is unfounded. Section 446, subdivision (a) does *not* refer to a "person" being compelled to be a witness against themselves. Instead it refers to a "party" who might be subjected to a criminal prosecution. How the word "person" has been interpreted in the context of the constitutional privilege is immaterial.

Indeed, while there is no constitutional privilege against self-incrimination for corporations, there is also no law prohibiting state legislatures from allowing corporations to file an unverified answer to a government complaint when verifying their answer might subject them to criminal prosecution. And that is what section 446 explicitly allows.

### c. Statutory History

In another attempt to persuade us that the phrase in section 446, subdivision (a) is co-extensive with the constitutional privilege against self-incrimination, the People point to the history of the statute. In our view, the statutory history leads to the opposite conclusion.

The People point out that section 446, subdivision (a) was enacted in 1872, when both natural persons and corporations were entitled to invoke the privilege against self-incrimination. If, as the People insist, the Legislature enacted section 446, subdivision (a) in light of the privilege against

---

[8] The Fifth Amendment can be invoked in a civil case too. (*McCarthy v. Arndstein* (1924) 266 U.S. 34, 40.)

self-incrimination, the Legislature must have intended section 446, subdivision (a) to apply to both natural persons *and* to corporations, and the language "might subject the party to a criminal prosecution" could be invoked by corporations.

In 1906, the Supreme Court held that the Fifth Amendment self-incrimination privilege did not apply to corporations. (*Hale v. Henkel* (1906) 201 U.S. 43, 75–76.) Notwithstanding this monumental holding, our Legislature did *not* amend section 446 to remove corporations from the ambit of parties that can forego verification if it "might subject the party to a criminal prosecution." In fact, when the Legislature did amend section 446, subdivision (a) in 1933, such that the "might subject the party to a criminal prosecution" exception pertained only to complaints filed by the government, the Legislature made no change to the definition of the term "party" or any modification suggesting the exception could no longer be invoked by a corporation. (See *DeCamp, supra,* 83 Cal.App.3d at pp. 275–276.) A reasonable inference is that the Legislature had no problem with corporations not verifying answers to government complaints if they might be subjected to criminal prosecution, notwithstanding the changed contours of the self-incrimination privilege.

The People spin the statutory history differently, claiming that the Legislature left alone the words "party" and the reference to a corporation being a party because "the Legislature's original intent was to track the constitutional self-incrimination privilege, and there is no evidence that the Legislature intended to depart from that understanding in 1933." The idea apparently is that the Legislature assumed everyone would know that the statute was coextensive with the constitutional privilege and would thereafter discern that any change to the privilege also changed the statute.

21

The People offer no legislative history or other evidence in support of their argument. Instead, we are asked to speculate that the Legislature intended the statute to be coextensive with the Fifth Amendment privilege against self-incrimination in 1872; it further intended the statute to "track" that privilege; it nonetheless chose to word section 446 not with the language of the constitutional privilege ("no person . . . shall be compelled in any criminal case to be a witness against himself"), but with the language found in the statute ("unless an admission of the truth of the complaint might subject the party to a criminal prosecution"); and 61 years later, while deciding what types of answers were subject to the verification exception, the Legislature chose not to clarify that a "party" no longer included a "corporation," because people could figure it out from the fact that courts had held a "person" who could avail itself of the constitutional privilege did not include a corporation.

There is no good ground for elevating the People's unsupported speculation above the plain language of the statute. If the Legislature actually had in mind that section 446 would track the constitutional privilege against self-incrimination, it seems to us that it would have said so in the statute—as it has done on other occasions. (Evid. Code, § 940 ["To the extent that such privilege exists under the Constitution of the United States or the State of California, a person has a privilege to refuse to disclose any matter that may tend to incriminate him."]; Evid. Code, § 930.) Nothing in the statutory history demonstrates that section 446, subdivision (a) must be coextensive with the privilege against self-incrimination.

### d. Does "Party" Mean Different Things in the Subdivision

As we have seen, a major stumbling block for the People is that section 446, subdivision (a) includes the language, "[w]hen a corporation is a party,"

22

indicating that the "party" that can invoke the exception to the verification requirement can be a corporation. The People respond by asserting that the statute's reference to a "party" being a "corporation" appears in a different part of subdivision (a) than the verification requirement, citing *People v. Jones* (1988) 46 Cal.3d 585 for the proposition that a word can sometimes have two meanings within the same statute. The theory is that a corporation can be a "party" that verifies a pleading but cannot be a "party" who is excepted from that requirement.

While *Jones* does allow for application of multiple meanings to the same word in different places in a statute, it does so only in limited circumstances not present here. In fact, *Jones* teaches that "[i]t is presumed, in the absence of anything *in the statute* to the contrary, that a repeated phrase or word in a statute is used *in the same sense throughout.*" (*Jones, supra,* 46 Cal.3d at p. 595, italics added.) In *Jones*, the difference in the function and language of two subdivisions led to the conclusion that the meaning of the word "crimes" in one subdivision was not the same as the meaning of "crimes" in another subdivision. (*Id.* at p.595–597.) By contrast, nothing in the language of section 446, subdivision (a) suggests that "party" means different things as used within that subdivision. The first paragraph of the subdivision mandates that an answer to a government complaint shall be verified "unless an admission of the truth of the complaint might subject the party to a criminal prosecution" and repeatedly references verification by a "party" or "parties;" it is in the first sentence of the very next paragraph, dealing also with verification, that the subdivision contemplates a "party" being a corporation and how a corporation would verify a pleading. We must follow the presumption that the word "party" is used throughout subdivision (a) in the same sense—to include corporations.

### e. Discovery Statutes

The People next claim that the "context" of section 446, subdivision (a) shows that the exemption from verification does not apply to corporations, because the Civil Discovery Act (§ 2016.010 et seq.), requires corporations to respond to discovery requests under oath.[9] Since discovery applies broadly to anything that appears reasonably calculated to lead to admissible evidence (§ 2017.010), the People insist that any allegation for which a verified answer might be required could later be the subject of a discovery request, and since the corporation would have to answer the discovery request under oath, we should interpret section 446, subdivision (a) to require corporations to verify their answer to the complaint under oath too. The argument is unpersuasive for multiple reasons.

As a threshold matter, we question whether the Discovery Act is the statutory "context" of section 446, subdivision (a) for purposes of statutory interpretation. Section 446 appears in Chapter 6 (Verification of Pleadings) of Title 6 (Pleadings in Civil Actions), of Part 2 (Civil Actions), and has to do with answering a complaint. The discovery statutes appear in Title 4 (Civil Discovery Act) of Part 4 (Miscellaneous Provisions) and apply to discovery, which occurs after the pleading stage.

At any rate, the discovery statutes do not shed light on whether corporations must answer a complaint with a verified answer. Not only do the statutes not address that topic, the verification requirements in the discovery statutes do not have the language in section 446, subdivision (a)

---

[9] For example, in response to requests for admission, the party to whom the requests have been directed must respond under oath separately to each request (§ 2033.210, subd. (a)) and sign the response under oath unless the response contains only objections (§ 2033.240, subd. (a)). If the responding party is a corporation, one of its officers or agents must sign the response under oath on behalf of the party. (§ 2033.240, subd. (b).)

24

that pertains to instances in which answering under oath "might subject the party to a criminal prosecution." Indeed, the discovery statutes are mute on the topic of self-incrimination generally, leaving it to the responding party to object under the Fifth Amendment. (See *A&M Records, Inc. v. Heilman* (1977) 75 Cal.App.3d 554, 566.) The discovery statutes do not, therefore, tell us how to interpret the phrase at issue here.[10]

Furthermore, the fact that a corporate defendant must respond under oath to *discovery* does not compel the conclusion that a corporate defendant should have to verify its *answer* under section 446. There are many reasons the Legislature might allow a corporation to file an unverified answer even though it would have to later respond to discovery under oath. Aside from the differences in the timing and purposes of answering a complaint as opposed to responding to discovery, many things could occur between answering the complaint and having to respond to discovery that could obviate the corporation's need to provide sworn responses and subject itself to criminal proceedings. (E.g., the case could be referred to arbitration or mediation so that the statutory discovery rules did not apply; the case could be dismissed on summary judgment on a purely legal issue before discovery was due; the corporate defendant could declare bankruptcy and obtain a stay of the proceedings; the government could dismiss the case before propounding discovery or moving to compel responses under oath; the threat of criminal prosecution could evaporate; the government could offer (or the court could

---

[10]    Interestingly enough, the term that *does* appear in both section 446, subdivision (a) and the discovery statutes—the word "party"—is plainly used in the discovery statutes to refer to corporations as well as to individuals, since those statutes specify how a corporation would respond under oath. (E.g., § 2033.240, subd. (b).)

order) the corporate defendant immunity from prosecution; the court could stay the civil case pending the disposition of the criminal prosecution.)

### f. Public Policy

Lastly, the People argue that "there is a strong public policy reason for why the Legislature would not have intended to create a special corporate privilege in Section 446(a)"—essentially, the same policy underlying the conclusion that the privilege against self-incrimination does not apply to corporations. A corporation is an entity granted "certain special privileges and franchises" and the freedom to conduct a wide range of economic activities in exchange for subjecting itself to the sovereign powers of the state. (*Hale, supra,* 201 U.S. at pp. 74–75; see also *Bellis v. United States* 417 U.S. 85, 90–91.) Allowing a corporation to hide behind the "cloak of the privilege" against self-incrimination would "largely frustrate legitimate governmental regulation of such organizations" (*Bellis*, at pp. 90–91) and stymie law enforcement efforts to prosecute them (*Braswell, supra,* 487 U.S. at p. 116).

The People's argument is amiss. The fact we can imagine a policy that would have supported limiting the scope of the exemption to the verification requirement does not mean that the Legislature did, in fact, choose to so limit the exemption. The Legislature could just have reasonably determined that, at the pleading stage, even a corporation should be able to avoid subjecting itself to a criminal prosecution when served with a government complaint. And in 1933, it could have chosen to maintain this protection for corporations as well as individuals, knowing full well that the corporation would not be able to avail itself of the self-incrimination privilege soon enough in discovery. This intention fits better with the language the Legislature included and retained in the statute.

26

Moreover, the horrors the People portend are imaginary. Our ruling does not extend the privilege against self-incrimination to corporations. We merely give effect to the plain meaning of the unambiguous language of section 446, which decrees that a party, which includes corporations, does not have to file a verified response if doing so might subject it to criminal prosecution. Adhering to the unambiguous words of the statute will do no harm to the People, since—as the People exhaustively point out—the corporation will likely have to provide responses under oath in discovery and will not be able to invoke the privilege against self-incrimination during the rest of the litigation.

Finally, allowing a corporation to forego verifying an answer under these circumstances outweighs the government interest in receiving a verified answer. The primary purpose of verification is to assure that the proponent of a pleading has a good faith basis for its assertions. (*California State University, Fresno Assn., Inc. v. Superior Court* (2001) 90 Cal.App.4th 810, 822, fn. 4.) In light of this purpose, the verification of an *answer* seems less critical than the verification of a complaint, since it is the latter that commences the litigation. In any event, the benefit to the plaintiff in receiving a verified answer pales in comparison to the detriment to corporate defendants in having to choose between either defaulting at the outset of a case and being deemed to have admitted unproved, unverified, allegations from the government, or subjecting itself to criminal prosecution in addition to the civil complaint.[11]

In sum, the plain meaning of section 446, subdivision (a) is that a party —including a corporation—need not verify its answer to a government

---

[11] The People urge that "verified answers also narrow the issues at the outset of litigation, focusing the parties' disputes so that they can be resolved efficiently." But *un*verified answers narrow the issues as well.

complaint if doing so might subject it to a criminal prosecution. Nothing in judicial precedent, statutory history, or public policy compels us to stray from the plain meaning of the Legislature's chosen language. The trial court therefore erred in requiring the Entity Defendants to file a verified answer.

## 2. Section 431.30 (General or Specific Denial)

Section 431.30, subdivision (b) mandates that answers contain "[t]he general or specific denial of the material allegations of the complaint controverted by the defendant." A general denial suffices in limited jurisdiction cases or when "the complaint . . . is not verified[.]" (§ 431.30, subd. (d).) If the complaint *is* verified, "the denial of the allegations shall be made positively or according to the information and belief of the defendant[.]" (§ 431.30, subd. (d).)

Here, the People's complaint was not verified. Accordingly, by the explicit terms of section 431.30, subdivision (b), the Entity Defendants were entitled to file a general denial.

The People nonetheless argue that complaints filed by a government plaintiff are "deemed" verified, so general denials are never allowed in response to a government complaint. For this proposition, the People rely on *Whitney v. Montegut* (2014) 222 Cal.App.4th 906, 913 (*Whitney*). The People are incorrect.

In *Whitney*, the trial court had granted the petition of the state medical board to compel a plastic surgeon to comply with investigative subpoenas issued in connection with a complaint filed against him. (*Whitney, supra*, 222 Cal.App.4th at p. 909.) The trial court concluded it had jurisdiction over the petition based on its factual finding that the investigation was conducted in part within the county. (*Id.* at p. 913.) Reviewing this finding for substantial evidence, the court of appeal initially noted "that the petition,

28

which is deemed verified under the terms of [section 446] (see *Murrieta Valley Unified School Dist. v. County of Riverside* (1991) 228 Cal.App.3d 1212, 1222–1223)" alleged that the investigation was conducted in the county. (*Ibid.*) The court then examined the contents of a declaration submitted by the board's attorney, and concluded that the *declaration* constituted substantial evidence that the investigation was conducted in the county. (*Id.* at p. 914.)

Whitney does not help the People's case. First, the idea in *Whitney* that the medical board's petition was "deemed verified" is dictum, since the court did not rely on the petition, but on counsel's declaration and other evidence, in concluding there was substantial evidence to support the trial court's finding.

Second, the court in *Whitney* did not decide the issue in this case—whether a complaint filed by a government entity is deemed verified for purposes of precluding a defendant from filing a general denial under section 431.30, subdivision (b). Section 431.30 and general denials were not discussed in *Whitney* at all.

Third, the remark in *Whitney* that the petition was "deemed verified" is not supported by the legal authority *Whitney* cited—*Murrieta* and section 446. *Murrieta* did not hold that government complaints are *deemed* verified. Rather, it held that the government did not *have to* verify its petition for a writ of mandate under section 1086 because section 446 specifically says the government does not *have to* verify its complaints. (*Murrieta, supra*, 228 Cal.App.3d at pp. 1221–1223.)

The text of section 446 bears this out. The second paragraph of subdivision (a) reads in pertinent part: "When the state, any county thereof, city, school district, district, public agency, or public corporation, or an officer

29

of the state, or of any county thereof, city, school district, district, public agency, or public corporation, in his or her official capacity is plaintiff, *the complaint need not be verified*; and if the state, any county thereof, city, school district, district, public agency, or public corporation, or an officer of such state, county, city, school district, district, public agency, or public corporation, in his or her official capacity is defendant, *its or his or her answer need not be verified*." (Italics added.) The third paragraph of subdivision (a) reads: "When the verification is made by the attorney . . . or when the verification is made on behalf of a corporation *or public agency* by any officer thereof, the attorney's or officer's affidavit shall state that he or she has read the pleading and that he or she is informed and believes the matters therein to be true and on that ground alleges that the matters stated therein are true. However, in those cases *the pleadings shall not otherwise be considered as an affidavit or declaration establishing the facts therein alleged*." (Italics added.)

From this statutory language we glean: the government does not have to verify its complaint or answer; a public agency *may* verify a pleading through an officer; but in that case the pleading does not establish the facts asserted. Nowhere does section 446 state that a pleading by the government is deemed verified (or even that a verified pleading of a public agency would constitute substantial evidence). Thus, while the first paragraph of section 446, subdivision (a) says that unverified government complaints as well as verified complaints require answers that are verified, there is no indication that government complaints are deemed verified for the purpose of precluding a general denial under section 431.30.

Finally, it is not logical to deem a government complaint verified so as to prohibit a general denial. If government complaints were deemed

30

"verified" due to the second paragraph of section 446, subdivision (a), there would be no reason for the provision in the first paragraph of section 446, subdivision (a), requiring a verified answer in response to a government complaint: the provision requiring verification of answers in response to "verified" complaints would suffice. And if the Legislature had intended that section 431.30, subdivision (b) require specific denials in response to any government complaint, whether verified or not, it easily could have said so.

The complaint of the People in this case was not verified, there is no basis for deeming it verified, and specific denials are not required.

### III. <u>DISPOSITION</u>

Let a peremptory writ of mandate issue directing respondent superior court to vacate its February 5, 2020 Order granting the People's motion to strike the answer of the Entity Defendants, and to enter a new order denying that motion. The previously issued stay will dissolve upon issuance of the remittitur. (Cal. Rules of Court, rule 8.490(d).) The parties shall bear their own costs. (Cal. Rules of Court, rule 8.493(a).)

31

_____
NEEDHAM, J.


We concur.


_____
JONES, Acting P.J.[*]


_____
BURNS, J.


*Paul Blanco's Good Car Company Auto Group v. Superior Court* / A159623

_____

[*] Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

A159623 / Paul Blanco's Good Car Company Auto Group v. Superior Court

Trial Court:Superior Court of Alameda County

Trial Judge:		Michael M. Markman

Counsel:	Brown, Rudnick; William W. Lockyer, Leo John Presiado, Ronald Rus, Samuel A. Moniz, and Shoshana B. Kaiser for Petitioners.

Xavier Becerra, Attorney General of California; Nicklas A. Akers, Senior Assistant Attorney General; Michael E. Elisofon, Supervising Deputy Attorney General; Hunter Landerholm, Adelina Acuna, and Joseph Ragazzo, Deputy Attorneys General for Real Party in Interest.