Filed 3/17/23 Marriage of Doslak CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of THOMAS and ANNE DOSLAK. | H049462<br>(Santa Clara County<br>Super. Ct. No. 1-10-FL153320) |
| THOMAS DOSLAK,<br><br>    Appellant,<br><br>    v.<br><br>ANNE DISSE,<br><br>    Respondent. | |

In this marital dissolution action, Thomas Doslak appeals from a 2021 postjudgment order requiring him to pay respondent Anne Disse additional child support.

Anne and Tom married in 2005 and separated in 2010.[1] In 2020, Anne filed a request for an order that sought additional child support for 2018 based on Tom having received substantial funds that year from the sale of a company he partially owned. Following contested proceedings, the trial court determined that all capital gain proceeds

---

[1] For consistency with the parties' briefing, we refer to the parties by their first names.

from the sale should be factored into Tom's child support obligation for 2018 and ordered him to make an *Ostler/Smith* payment[2] of $369,057 in principal, plus interest.

Tom appeals the order, asserting a variety of errors by the trial court. He maintains that the trial court erred by declaring unenforceable a portion of the 2013 judgment of dissolution that excluded the sale of certain assets (including the company at issue here) from child support calculations and by retroactively modifying his child support obligation. He also asserts the trial court erred by failing to issue a written statement of decision. He requests we reverse and remand for further proceedings to redetermine child support.

For the reasons explained below, we agree that the trial court erred in part and remand with directions.

## I. FACTS AND PROCEDURAL BACKGROUND

### A. *Factual Background*

The underlying facts are undisputed. Tom and Anne married in 2005 and separated in 2010. They have two minor children, born in 2006 and 2007, and share equal parenting time.[3]

Prior to the marriage, in 2003, Tom cofounded a company called Streamline Circuits Corporation (Streamline).[4] Tom owned an interest in Streamline and was also an employee, receiving salary and benefits.[5] Tom and the cofounders sold Streamline in

---

[2] "An *Ostler-Smith* payment is an additional support award calculated as a percentage of discretionary bonus income actually received. (*See In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 949; *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33, 54.)" (*Brubaker v. Strum* (2023) 87 Cal.App.5th 497, 502, fn. 2.)

[3] At the time of the 2013 judgment, Tom's parenting time was 71 percent and Anne's parenting time was 29 percent. It later changed to equal time.

[4] The record reflects that the company's name later changed to Streamline Holdco, Inc.

[5] Streamline also paid Tom certain "pass-through" business income starting in 2017, when Streamline was converted from a C-corporation to a S-corporation. As a

2

2018. As reflected in his 2018 tax documents, Tom received $5,025,060 in December 2018 that included a realized capital gain of approximately $3.8 million for the sale of his interest in Streamline.[6]

B. *Procedural Background*

In 2010, Tom petitioned to dissolve his marriage with Anne. Over the course of this action, the parties have engaged in extensive litigation over support and other issues. Both parties paid and received child support under a number of orders by different judicial officers of the superior court.[7] We detail below the relevant decisions and orders, as framed by the issues before us in this appeal.[8]

1. 2013 Judgment

In 2013, after a contested proceeding, a bench officer (Commissioner Irwin Joseph) resolved many issues between Anne and Tom and entered a judgment of dissolution that issued on April 16, 2013 (2013 judgment).

The 2013 judgment divided the parties' assets and obligations. The judgment provided that Tom's separate property included "[a]ny and all interest" in Streamline.[9] Tom was ordered to pay Anne monthly child support. The 2013 judgment attached, inter

---

result of this change, Streamline passed through income to Tom that was reported on his personal tax returns for 2017 and forward. While the parties litigated issues related to Tom's pass-through income in the trial court, that income is not at issue in this appeal.

[6] A tax document (schedule K-1) states Tom's ownership in Streamline was 12.1555690 percent for the 2018 tax year.

[7] As Anne's obligations to Tom are not at issue in this appeal, we do not address them further. She does not challenge the part of the August 2021 order at issue in this appeal that found she owed Tom a specified sum as a 2018 *Ostler/Smith* payment.

[8] The record references child support orders dated February 16, 2010, and October 20, 2011, which predate the judgment of dissolution. While Anne mentions these two orders as "relevant" in her statement of facts, she does not rely on them for any argument in this appeal. Tom likewise does not rely on these orders. We conclude these orders are not material to our analysis in this appeal.

[9] The 2013 judgment listed other companies and accounts as Tom's separate property that are not at issue here.

3

alia, a calculation from the DissoMaster software program[10] that included the figure of $18,208 for Tom's 2013 monthly wages and salary. Additionally, as "further child support [Tom] will pay [Anne] 5% of the gross amount of any income he receives in any calendar year from employment in excess of $219,480 per annum, ($18,290 x 12)."

The judgment furthermore provided: "Excluded from the calculation of income available for support is the sale of capital assets, including the sale of the principal residence, as articulated in *In re Marriage of Pearlstein* (2006)[] 137 C[al.]A[pp.]4th 1361 and *In re Marriage of Williams*[] (2007) 150 C[al.]A[pp.][4th] 1221. Also excluded will [be] the sale of any other asset awarded to either party of the property as set forth in this judgment, and finally, also excluded is the subsequent proceeds of any subsequent sale of any asset (RSU[11] for example) on which percentage support has already been calculated, to avoid a double dip."

Neither Tom nor Anne appealed the 2013 judgment.

### 2. Subsequent Litigation Over Child Support and 2015 Order

Shortly after the judgment issued, Anne filed a motion in April 2013 requesting modification of child support and the calculation of *Ostler/Smith* payments (2013 motion). In December 2014, the judicial officer hearing the 2013 motion (Commissioner Edward F. Mills) issued a statement of decision (SOD).[12]

---

[10] " 'The DissoMaster is a privately developed computer program used to calculate guideline child support under the algebraic formula required by [Family Code] section 4055.' " (*In re Marriage of Usher* (2016) 6 Cal.App.5th 347, 352, fn. 5.)

[11] The 2013 judgment does not define "RSU." Presumably, the acronym stands for "restricted stock unit." (See *Bader v. Anderson* (2009) 179 Cal.App.4th 775, 785.)

[12] According to a 2014 statement of decision in the record, Anne had "opened a case with" the Santa Clara County Department of Child Support Services (DCSS) and her 2013 motion was therefore referred to the department where Commissioner Mills presided. DCSS filed a notice of substitution of payee in June 2013 and appeared at the hearing leading to the 2016 support order. Anne did not serve DCSS with her request for order (filed on March 17, 2020) that lead to the order at issue in this appeal (filed on August 27, 2021), and DCSS did not appear at any of the hearings related to her request. DCSS has not appeared in this appeal.

Commissioner Mills subsequently filed on February 11, 2015, a "Supplement to Statement of Decision" (supplemental decision) that responded to various objections raised by the parties. In the supplemental decision, Commissioner Mills included the following language: "Tom's counsel proposes an 8.9% amount as additional child support over Tom's base 2014 salary of $18,208 per month from all sources not including the items specifically excluded from the calculation as set forth in the Judgment of Dissolution as determined by Commissioner Joseph. The Court will adopt this amount for the years 2014 forward."

On March 4, 2015, Commissioner Mills issued a written order described as "Order After Hearing: Child Support, Childcare Costs, and [*Ostler/Smith*] Amounts" (2015 Order). It addressed, inter alia, additional child support owed by Tom. The order stated that "For the period from January 1, 2014 forward, [Tom] shall pay to [Anne] 8.9% of income in excess of $18,298 of monthly income from all sources as additional child support and taking into consideration any tax preference items appearing in his income tax returns." This order did not mention the 2013 judgment.

### 3. 2016 Order

Following another contest over child support, the trial court (Commissioner Kimberley E. Parker) issued an order after hearing that was filed on November 8, 2016 (2016 order). The parties agree that this was the most current child support order that preceded the order at issue in the present appeal.

The 2016 order required Tom to pay Anne $1,702 in monthly child support beginning September 1, 2018. Additionally, the order addressed *Ostler/Smith* payments for 2016 and 2017 and specified how they should be calculated. As to 2017, the court ordered that it would be calculated by taking 9.1 percent of Tom's "income over a base monthly salary of $21,271.00." The order attached a computer printout showing the calculation of current guideline child support as $1,702.

5

The order included the language that "All orders previously made in this action remain in full force and effect except as specifically modified below."

The 2016 order did not specifically address payments for 2018.

### 4. Anne's 2020 Request for Order

On March 17, 2020, Anne filed a request for order (RFO) seeking to modify child support and to order Tom to make *Ostler/Smith* payments for the years 2016, 2017, and 2018. Only Anne's request for 2018 is at issue in this appeal.[13]

In her RFO, Anne requested to modify the 2016 order, which she attached as an exhibit. In support of the RFO, Anne stated that she believed Tom "currently makes nearly triple what he made when the Order was made in 2016." Anne asserted that she believed Tom had "grossed millions of dollars" from the 2018 sale of Streamline. Anne's declaration in support of the RFO stated she was requesting that the court "modify" the 2016 order based on Tom's "significant increase in employment income" and attached a DissoMaster calculation with an *Ostler/Smith* "bonus table." Anne claimed Tom owed her $434,603.87 as the 2018 *Ostler/Smith* payment (representing $434,437.72 in "balance" plus $6,665.35 in interest, and "offset" against $6,499.20 for what Anne owed for 2018).

### 5. Tom's Opposition

In August 2020, Tom filed a responsive declaration opposing the RFO. Regarding Anne's request to modify support, Tom stated he consented to guideline child support. However, he opposed Anne's request for additional child support payments for 2018 to the present.

---

[13] The parties subsequently resolved by stipulation in the trial court the *Ostler/Smith* obligations for 2016 and 2017. Anne's March 2020 RFO also requested, inter alia, "need-based attorney fees and/or sanctions" but that request was not resolved in the order at issue in this appeal.

Tom agreed with Anne that the 2016 support order was the "current" order for child support purposes, but he contended that it did not include any *Ostler/Smith* payment "provision" for 2018. Tom also argued the 2013 judgment precluded Anne's request for additional support in 2018 because the judgment "specifically excluded the sale of capital assets" as income for child support.

### 6. Pretrial Hearings and Additional Briefing on Anne's RFO

On September 8, 2020, the trial court (Hon. Cindy Seeley Hendrickson) held a hearing addressing Anne's RFO. Anne's counsel began by stating there was a "litany of orders from at least 2013 to present" and that "we need judicial guidance" to interpret and decide "what are the current operative orders." After the trial court inquired about the pending DCSS case, Anne's attorney responded that the DCSS case was still open but that Anne's RFO did not plead for "modification of underlying base child support" but rather "pled for enforcement of [*Ostler/Smith*]."

Tom's attorney countered that Anne had in fact requested modification in her pleadings, but that, in any event Tom and his attorney were willing to "meet and confer on modification of child support" and they did not object to "this going back to DCSS for modification." Anne's attorney agreed that "we'll end up stipulating pretty easily to modify base support" and "[w]hat we really want to brief is the history of applicable orders on [*Ostler/Smith*] and add-ons and how they're shared and how they're reimbursed."[14] Tom generally opposed the *Ostler/Smith* payments requested by Anne.

The trial court stated it had looked "more closely" at the issue "about whether or not the very large amount [Anne] is claiming for 2018 would be supported by the prior orders." As to that issue, the trial court discussed the exclusionary language in the 2013 judgment. The trial court observed that "the logical interpretation" of the 2013

---

[14] Add-ons are "additional child support in the form of tuition payments and the like." (*In re Marriage of Alter* (2009) 171 Cal.App.4th 718, 723 (*Alter*).) Neither party raises any claim related to add-ons in this appeal.

7

judgment's language was that Tom's "sale of that asset was not going to be included" in calculating additional child support. Anne's attorney agreed that the language in the 2013 judgment was "very, very important" but believed it had "been super[s]eded or should not be applied" and requested further briefing on that issue.

The trial court agreed to further briefing. The disputed legal issue for the trial court, as framed by the parties, was whether the 2013 judgment was "still in effect." The trial court set a briefing schedule to address that issue and set a further hearing for December 9, 2020. The parties submitted briefing in October 2020 addressing legal and factual issues related to Anne's RFO.

On December 9, 2020, the trial court issued what it characterized as a tentative decision. The court explained that it was "interpreting existing orders" and that it was not deciding a motion for modification of base child support or a motion to reconsider prior orders. It tentatively decided that *Ostler/Smith* payments applied to post-2017 years.

Addressing the 2013 judgment, the trial court observed that there had been an "agreement by the parties that . . . either that item or the sale of it could not be used – would not be considered income available for support." Notwithstanding the provisions of the 2013 judgment, however, the trial court concluded that the "case law is very, very clear that the parties can't contract away the children's right to support" and cited to the decision by this court of *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269 (*Cheriton*). Applying that case law, the trial court concluded that the provision in the parties' "agreement" as to Streamline was "not enforceable" and it was "not something this court can or should honor in terms of deciding child support." The trial court stated Tom's money from the sale of Streamline was "the children's money" and therefore was "to be factored into the child support calculations . . . for the year in which he obtained the money."

In response to the trial court's tentative decision, Tom's attorney pointed out that the 2013 judgment was not an agreement but rather had resulted from a contested

8

hearing. The court viewed this distinction as irrelevant because "to the extent the Court made an order that is obviously in conflict with well[-]established case law" such an order "becomes an unenforceable order."

The trial court invited an evidentiary hearing as to the underlying dollar amounts at issue, but stated that its "legal conclusions will remain." The parties agreed to set an evidentiary hearing to address the "figures for . . . [*Ostler/Smith*] support."

Following the court's oral tentative ruling on December 9, 2020, Tom filed a request for a written statement of decision. (See Code Civ. Proc. § 632; Cal. Rules of Court, rule 3.1590(d).) Anne opposed Tom's request. The parties also submitted trial briefs in advance of the June 2021 trial.

### 7. 2021 Trial and Decision and the Present Appeal

The trial court held a one-day trial on June 17, 2021.

Prior to taking evidence, the trial court stated it was making "final" its prior tentative ruling that "according to the terms of the existing child support orders" that "[*Ostler/Smith*] payments are due for 2018 and going forward." The trial court stated it had previously explained its reasons for that ruling and would not elaborate further on it.

Tom's attorney inquired whether the court was ruling that the 2016 support order contained the *Ostler/Smith* order. The trial court responded that "There are number of orders in this case" and "the state of all existing orders that remain in effect that were not revoked, contradicted, undone, the state of the orders that were - - are currently in effect do require [*Ostler/Smith*] payments. And I'm going to leave it at that, because I have stated the reasons extensively elsewhere."

Tom renewed his request for a statement of decision, arguing that the court had retroactively modified child support by changing the 2016 order to include a 2018 *Ostler/Smith* payment, and therefore the Family Code required the trial court to issue a written statement of decision. The court rejected the assertion that it was modifying any child support order and denied Tom's request for a written statement of decision.

9

During the evidentiary phase of the hearing, the court admitted a number of exhibits, without objection, including Tom's 2018 tax returns and the 2018 schedule K-1 for Streamline reflecting Tom received a net long-term capital gain of $3,806,144 in that year. The trial court also took judicial notice of a number of the prior rulings in the action, including the 2013 judgment, the 2015 order, and the 2016 order.[15]

Anne, Tom, and Tom's expert testified. Tom confirmed that his 2018 federal tax return reflected he had a total income of $5,029,293, and that he had a substantial capital gains event in 2018, when he sold his interest in Streamline. He confirmed he had received cash for the sale of his shares in Streamline. Anne testified that her total income on her federal tax return for 2018 was $120,610.

Tom's forensic accountant (James F. Butera) testified as an expert in the areas of tax issues and child support calculation. Butera explained he had prepared three alternative calculations for the additional child support owed by Tom based on his "bonus" income for 2018. For each scenario he used the 9.1 percent figure for "the [*Ostler/Smith*] percentage" and Tom's base monthly salary ($21,271) set forth in the 2016 order.[16]

For the first calculation (i.e., the "first scenario") Butera used an income figure that included only Tom's salary ($504,679). Scenario 2 was based on income that included Tom's salary plus the capital gain associated with the Streamline sale. Under scenario 2, Tom's total income for 2018 was $4,310,823 (consisting of $504,679 in salary plus Tom's capital gains of $3,806,144). Butera calculated that Tom owed

---

[15] The trial court took judicial notice of orders dated February 16, 2010; October 20, 2011; April 16, 2013 (i.e., the 2013 judgment); March 4, 2015; and November 8, 2016 (i.e., the 2016 order). Additionally, the court took judicial notice of statements of decision dated February 22, 2013, and December 16, 2014, and the supplemental statement of decision dated February 11, 2015.

[16] Butera also performed calculations using the percentage (8.9 percent) and base income figures from the 2015 order.

additional child support of $369,057 under scenario 2. This figure was ultimately adopted by the trial court.

Scenario 3 included the salary income plus capital gain from the sale of Streamline "but [] limited to gain used for living expenses." For both scenario 1 and 3, Butera calculated Tom owed $22,698 on his bonus income for 2018.

Butera analyzed Tom's treatment of the approximately $5 million that he received in December 2018 and through "March, May 2019." The "initial stock sale proceeds" were deposited in a Wells Fargo Advisors account on December 10, 2018. Tom had "invested" approximately $2.4 million in three "Wells Fargo Advisor accounts" that were not bank accounts but rather investment brokerage accounts, used $927,388 in January 2019 for a house purchase, and transferred the remaining funds ($915,000) to a Chase Bank checking account.

Butera testified that Tom had paid approximately $1.4 million in taxes, including federal capital gain tax, on his capital gain of approximately $3.8 million. Butera explained that under federal law (principally the Code of Federal Regulations of the IRS) "the sale of a company or company stock would be treated as the disposition of a capital asset, which is why it was reported on [Tom]'s 2018 K-1 as a long-term capital gain." Butera explained Tom had "wor[n] two hats" for Streamline. "He had one role as an employee for which his compensation for services was reported on his W-2" and "[s]eparate and apart from that, everything on a K-1 statement would be as a result of his ownership interest in the corporation unrelated to compensation for services." He contrasted Tom's interest in Streamline with any employee receiving stock options that are typically "issued to employees as a form of compensation for services which more often than not is for future services."

At the conclusion of the trial, the trial court orally delivered its decision. The court observed that it had found Butera to be "a very credible witness" and "just disagree[d] with him on the law." It found that all of the income reflected on Tom's 2018

11

income tax return (other than $770,000 that was his pass-through income) "is available for support, including the approximately 3.8 million dollars that he received as realized capital gain proceeds from the sale of his interest in Streamline Circuits."

The trial court reasoned that the decision of *In re Marriage of Pearlstein* (2007) 137 Cal.App.4th 1361 (*Pearlstein*) was distinguishable because Tom had "diversified" the proceeds by putting the proceeds in "different accounts" and had bought a house. The trial court decided that this was "not the sort of reinvestment contemplated or described in" *Pearlstein* or in "other cases where they found that the reinvestment was of the sort that made that income not available for support."

Addressing the 2016 support order, the trial court focused on the language that "All orders previously made in this action remain in full force and effect except as specifically modified below" and therefore "[y]ou also have to look back for other provisions, other orders that were made."

Turning to the 2013 judgment, the trial court noted it had "previously addressed" that order and that it "excluded . . . the income either party derived from the sale of property that was given to them as separate property." The court found that if it applied that provision of the 2013 judgment to exclude Tom's realized gains from the sale of Streamline it would "eliminate the child's right to support, which the law clearly does not allow parties to agree to do." The court further stated, "And, presumably, then the court would abuse its discretion in making the order if it did the same thing."

The trial court found that Tom owed Anne $369,057 in principal, plus interest starting on February 1, 2020. The court denied Tom's request for a written statement of decision.

On August 27, 2021, the court issued a written order. The order states, inter alia, that "[c]onsistent with its tentative ruling on [December 9,[17]] 2020, this Court finds that the provisions in effect from prior orders do require ongoing 'Ostler & Smith' payments between the parties using the percentages from the [2016 support order] for 2018 and forward unless and until modified." In the portion of the order addressing "2018 'Ostler & Smith' Obligations" the trial court stated Tom owed Anne "additional child support principal of $369,057."[18]

Tom timely appealed the postjudgment order. (Code Civ. Proc. § 904.1, subd. (a)(2); see *In re Marriage of Brinkman* (2003) 111 Cal.App.4th 1281, 1287.)

## II. DISCUSSION

Tom cites two grounds for reversal of the trial court's order. First, he argues the trial court erred by refusing to enforce the 2013 judgment, which excluded the funds at issue here, thereby violating the principle that one judge may not overrule another. He maintains that, based on the 2013 judgment, the trial court should not have used all of his capital gains income related to the sale of Streamline to calculate additional *Ostler/Smith* child support for 2018. Second, he contends the trial court erred by retroactively modifying his child support obligation when it determined the 2016 order included a 2018 *Ostler/Smith* payment obligation.[19]

---

[17] Although the order states "[c]onsistent with its tentative ruling on 12/08/2020," the actual date is presumably December 9, 2020, as the order elsewhere notes the court delivered its oral tentative decision on that date.

[18] The trial court also found Tom owed interest on the principal but did not indicate an interest rate. The court stated that the parties would meet and confer as to the interest calculations and noted that counsel had stipulated "in court to run 10 [percent] simple annual interest on these sums from [February 1,] 2020 forward."

[19] Tom also asserts the trial court erred by denying his request that it issue a written statement of decision. In his opening brief, Tom concedes that any error was "likely harmless" because there are no disputed facts and "the trial court's reasoning is well set out in the record." (See *F.P. v. Monier* (2017) Cal.5th 1099.) We agree that, in light of the uncontested facts and the ample record before us, any error by the trial court

13

Anne disputes all of Tom's contentions of error. She maintains a reversal would undermine the basic principles governing child support.

A. *Legal Principles and Standards of Review*

1. Child Support Principles

"California has a strong public policy in favor of adequate child support. [Citations.] That policy is expressed in statutes embodying the statewide uniform child support guideline. (See, Fam. Code, §§ 4050–4076.)" (*Cheriton*, *supra*, 92 Cal.App.4th at p. 283.) "The overriding policy behind the child support statutes is to assure that children share in their parents' standard of living and have adequate support." (*Id.* at p. 312.)

"The mandatory formula for calculating child support takes into account both parents' 'net monthly disposable income' ([Fam. Code,] § 4055, subds. (a) & (b)), which is determined based upon the parents' 'annual gross income' ([Fam. Code,] § 4058)." (*Alter*, *supra*, 171 Cal.App.4th at p. 731.) "[I]ncome is broadly defined for purposes of child support." (*Cheriton*, *supra*, 92 Cal.App.4th at p. 285.) By statute, the annual gross income of parents for support purposes "means income from whatever source derived" (Fam. Code, § 4058, subd. (a)) (with certain exceptions not at issue here). (*Id.*, subd. (c).)

"Regarding a parent's assets, the Supreme Court has stated, 'Assets at the time of dissolution play little part in the computation of child support. They may enter indirectly into the calculation in two ways: (1) In assessing earning capacity, a trial court may take into account the earnings from invested assets [citation]; and (2) a court may deem assets a "special circumstance" ([Fam. Code,] § 4057, subd. (b)(5)) that may justify a departure from the guideline figure for support payments [citation]. But these are exceptional situations; the child support obligation is based primarily on actual earnings and earning

in failing to issue a statement of decision is harmless. We therefore decline to further address Tom's contention of error as to the failure to issue a written statement of decision.

14

capacity.' " (*In re Marriage of Sorge* (2012) 202 Cal.App.4th 626, 643 [quoting *Mejia v. Reed* (2003) 31 Cal.4th 657, 671].)

*Pearlstein* addressed, inter alia, a family court's discretion to treat stock and cash from the sale of a business as income for purposes of child support. (*Pearlstein*, *supra*, 137 Cal.App.4th at p. 1372.) In that decision, the First District Court of Appeal, Division 2, observed that " '[s]upport payments usually are paid from present earnings, not liquidation of preexisting assets.' " (*Ibid*.) However, it also noted that a child support obligor's assets may be relevant for determining their income for support purposes, "[f]or example, where the supporting party has chosen to invest his or her funds in non-income-producing assets." (*Id*. at p. 1373.) In that situation, "the trial court has discretion to impute income to those assets based on an assumed reasonable rate of return." (*Ibid*.)

Additionally, the *Pearlstein* court addressed various scenarios, including the one where the obligor (similar to Tom) receives "cash" from selling a company. (*Pearlstein*, *supra*, 137 Cal.App.4th at p. 1376.) The court observed that the cash represents a realized capital gain and was a "capital asset" because it "was the proceeds from the liquidation of a capital asset." (*Ibid.*) It stated the following rule: "To the extent that a support obligor has spent funds derived by liquidating his or her capital, rather than reinvesting them, the trial court acts *within its discretion* in considering the funds expended to be income for support purposes." (*Ibid*., italics added.)

### 2. Standards of Review

We generally review child support awards for abuse of discretion. (*Cheriton*, *supra*, 92 Cal.App.4th at p. 282.) "In exercising its discretion, however, the trial court must follow established legal principles. [Citation.] To decide whether the trial court followed established legal principles and correctly interpreted the child support statutes, we apply the independent standard of review." (*Alter*, *supra*, 171 Cal.App.4th at p. 731.)

Here, the parties dispute the legal effect of the 2013 judgment and subsequent orders and decisions. Accordingly, we use the following standards of review: " 'The

meaning and effect of a judgment is determined according to the rules governing the interpretation of writings generally. [Citations.] " '[T]he entire document is to be taken by its four corners and construed as a whole to effectuate the obvious intention.' " [Citations.] " 'No particular part or clause in the judgment is to be seized upon and given the power to destroy the remainder if such effect can be avoided.' " [Citations.] [¶] Where an ambiguity exists, the court may examine the entire record to determine the judgment's scope and effect. [Citations.] The court may also " 'refer to the circumstances surrounding the making of the order or judgment, [and] to the condition of the cause in which it was entered.' " ' " (*In re Marriage of Rose & Richardson* (2002) 102 Cal.App.4th 941, 948–949 (*Rose & Richardson*).) "In the absence of ambiguity" in a judgment, "we conduct de novo review" of its provisions. (*Id.* at p. 949.)

B. *Analysis*

1. Effect of Later Orders on 2013 Judgment

The 2013 judgment specifically excluded from the calculation of income available for child support "the sale of capital assets" and "the sale of any other asset awarded to either party of the property as set forth in this judgment." Pursuant to the judgment Tom's separate property included "[a]ny and all interest" in Streamline. We agree with Tom that this language excluded proceeds from the sale of Streamline for purposes of calculating child support calculation. (See *In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 989 (*Falcone & Fyke*).)

Anne does not contend the relevant language in the 2013 judgment is unclear or ambiguous. Rather, she argues it was no longer in effect because the 2015 order superseded the 2013 judgment. She also points out that the 2016 support order does not contain any exclusionary language. Tom, on the other hand, claims that the key language in the 2013 judgment remained in effect at the time Anne filed her RFO in 2020, even though his child support obligation had otherwise changed in subsequent orders.

16

Turning first to the 2015 order, no language in that order states that it superseded the 2013 judgment. Nor do we discern any language from which that conclusion may be inferred. The 2015 order does not address Tom's interest in Streamline or the exclusionary language in the 2013 judgment.

Anne points out that the 2015 Order used the language of " 'income from all sources' for both parties" and that it "did *not* incorporate any exclusions" from the 2013 judgment. Anne argues that the 2015 Order therefore put that exclusionary language "in[] the past." We do not agree. There is no language in the order that reasonably supports Anne's assertion that the 2015 order "did away with all [the] exclusions from the guideline child support and [*Ostler/Smith*] calculations that appeared in the 2013 Judgment." (Italics omitted.)

Moreover, to the extent the 2015 order is ambiguous, the circumstances surrounding the making of the order support Tom's interpretation that the 2015 order did not supersede the 2013 judgment as to the treatment of Streamline for purposes of child support. In the December 2014 SOD, the judicial officer hearing the 2013 motion (Commissioner Mills) used language explicitly stating he was superseding other aspects of the 2013 judgment (decided by Commissioner Joseph). For instance, as to the allocation of daycare costs, Commissioner Mills stated his decision "specifically supersedes Commissioner Joseph's order with respect to the exchange of proof of daycare expenses from May 1, 2013 onward." No such language appears with respect to the exclusion of separate property (including Streamline) from the calculation of income available for child support.

Additionally, as Tom points out, Commissioner Mills stated in the supplemental decision filed on February 11, 2015, that Tom's income was to include "all sources *not including the items specifically excluded from the calculation as set forth in the Judgment of Dissolution* as determined by Commissioner Joseph." (Italics added.) We agree with

17

Tom that this language underscores that the 2015 order did not purport or intend to supersede the 2013 judgment's exclusions of certain income from child support.

Anne appears to concede this language in the supplemental decision undermines her interpretation of the 2015 order. However, she maintains it is significant that the final 2015 order did not include the supplemental decision's language and she further observes that a statement of decision is not appealable when a formal order or judgment follows. We do not see the relevance of this observation.

In interpreting an order we may refer to the "circumstances surrounding the making of" the order. (*Rose & Richardson*, *supra*, 102 Cal.App.4th at p. 949.) In the context of interpreting the 2015 order, we may properly review the statement of decision that immediately preceded the final written order issued by the same judicial officer, whether or not that decision was appealable. Additionally, that Commissioner Mills did not repeat in the 2015 order the explanatory language in the supplemental decision is not relevant because the final order stated he based his orders on the findings set forth in the SOD and supplemental decision. We therefore reject Anne's argument that the 2015 order superseded the language in the 2013 judgment pertaining to Tom's interest in Streamline and excluding that interest from child support.

We turn next to the 2016 order. Based on our review of that order, we are not persuaded by Anne that it superseded the 2013 judgment on the question of how to treat the proceeds from the sale of Streamline for purposes of child support. The 2016 order does not indicate the 2013 judgment had been superseded. The order contains no language specifically modifying the 2013 judgment. To the contrary, it states that "[a]ll orders previously made in this action remain in full force and effect except as specifically modified below." The 2016 order contains no reference to Streamline or the characterization of Tom's separate property.

Finally, while we have independently reviewed the 2015 and 2016 orders for purposes of our analysis, we note that in its 2021 order (which is the subject of this

18

appeal) the trial court also did not make any finding that the 2013 judgment had been superseded.

We therefore reject Anne's argument that the 2015 and 2016 child support orders superseded the 2013 judgment as to the treatment of Streamline and its sale for purposes of calculating child support. As the relevant language in the 2013 judgment was not superseded at the time of Anne's 2020 RFO, we turn to the trial court's ruling that the language was unenforceable.

### 2. Trial Court's Ruling that the 2013 Judgment Was Unenforceable

Tom contends the trial court's refusal to enforce the terms of the 2013 judgment violated the principle that one trial judge cannot not overturn the order of another trial judge.

"As a general rule, a trial judge cannot overturn the order of another trial judge." (*Paul Blanco's Good Car Co. Auto Group v. Superior Court of* (2020) 56 Cal.App.5th 86, 99.) "Weighty concerns compel this long-standing principle. [Citation.] Fundamentally, it 'is founded on the inherent difference between a judge and a court and is designed to ensure the orderly administration of justice.' [Citation.] Because a superior court is a single entity comprised of member judges, ' "one member of that court cannot sit in review on the actions of another member of that same court." ' " (*Ibid.*) This general rule, subject to certain exceptions not applicable here, applies even as to interim orders, and a "[m]ere disagreement . . . with the prior trial judge's ruling . . . is not enough to overturn that ruling." (*In re Marriage of Oliverez* (2015) 238 Cal.App.4th 1242, 1249.)

"For one superior court judge, no matter how well intended, even if correct as a matter of law, to nullify a duly made, erroneous ruling of another superior court judge places the second judge in the role of a one-judge appellate court." (*In re Alberto* (2002) 102 Cal.App.4th 421, 427.) The "rule prohibiting a second judge from interfering with

19

another judge's order is the same whether the second judge acts before or after judgment." (*Id*. at p. 429.)

Applying these principles, we conclude the trial court erred when it decided the 2013 judgment issued by a different bench officer in this action was unenforceable. We note that Anne does not meaningfully challenge Tom's claim of error based on the principle that one judge may not overrule another. We decide that the trial court's disagreement with the language in the 2013 judgment that excluded certain income from *Ostler/Smith* payment calculations was not a valid basis upon which it could refuse to enforce the judgment.

The trial court relied largely on this court's decision in *Cheriton* in declaring the judgment void or unenforceable. But its reliance on that case for that purpose was misplaced. *Cheriton* is both factually and legally distinguishable. As a factual matter, it reviewed a trial court ruling based in part on a postnuptial agreement by the parties (*Cheriton*, *supra*, 92 Cal.App.4th at p. 281), rather than a judgment made by another officer of the court in the same action following contested proceedings. Furthermore, *Cheriton* did not have cause to address the question of the authority of one judge to overrule another's judgment where the judgment addressed the capital asset at issue in dispute. (See *B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 11 ["As we have repeatedly observed, ' "cases are not authority for propositions not considered." ' "].)

Additionally, we do not read *Cheriton* as broadly as the trial court appears to have done. We understand from the record that the trial court may have believed *Cheriton* compelled a finding that the 2013 judgment was illegal as to the portion limiting income to be included in calculating child support. However, the 2013 judgment cited to *Pearlstein*, which supports the judicial officer's implied conclusion that it was not mandated to find that Tom's separate interest in Streamline, or sale of that interest, had to be included in an income calculation for child support then or going forward. (See *Pearlstein*, *supra*, 137 Cal.App.4th at pp. 1376–1377.) Thus, even assuming the trial

20

court had authority to correct an error made by a previous judicial officer under similar circumstances, we are not convinced there was any error to correct, because the court had the discretion to exclude the sale of Streamline from the calculation of income available for child support. (*Id*. at p. 1377.)[20]

Anne also points to the general policy that parents must support their children and that the children are entitled to share in Tom's wealth. She states "Tom's analysis presents the issue of a parent 'investing' in real property, cars, luxury items, and easily liquidated accounts in an effort to avoid a child support obligation, under the guise of a *Pearlstein* analysis." She furthermore argues "[t]here is nothing stopping him from 'investing' in this manner and then selling his assets a few short years later when the children age out of child support, and never meeting his obligation to support them according to his abilities, station in life, and actual earnings." Those general arguments, however, do not address whether the trial court had authority in its 2021 ruling to deem the 2013 judgment unenforceable. We conclude it did not.

Moreover, the record reflects that Tom agreed to guideline child support in his response to Anne's RFO and did not object to modifying support, and he does not claim the proceeds from his sale of Streamline are "off limits" in their entirety. Rather, Tom states in this appeal that he has reinvested the money he made from the sale of Streamline and Anne would be entitled to a reasonable rate of return on his investments, citing to, inter alia, *Pearlstein* and this court's decision in *Williams*.

For these reasons, we conclude the trial court erred when it determined the 2013 judgment's language limiting the income available for child support was unenforceable.

---

[20] In her briefing in this court, Anne asserts that the trial court "was not even bound by *Pearlstein* in the first place" because "[i]t is a 2006 appellate opinion from the First District - nothing more and nothing less." We disagree. "Under the doctrine of *stare decisis*, all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction." (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

The trial court therefore erred in including all of the capital gain proceeds Tom received from the Streamline sale in its child support calculation for 2018 and refusing to honor the limitations on income to be used in child support calculations set forth in the 2013 judgment.

### 3. *Trial Court's Finding Regarding Ongoing* Ostler/Smith *Payments*

Tom also challenges the trial court's finding that the parties had "ongoing" *Ostler/Smith* obligations for 2018 and forward and that the percentage to be applied was the percentages from the 2016 order. He contends the 2016 order did not address 2018, and the trial court's interpretation amounted to an impermissible retroactive modification of the support order.[21] Tom asserts "If Anne wished an order to continue past 2017 she needed to do what she did in 2020 - file an RFO. She did that and the court then had the discretion to make a retroactive order - starting on the date she filed her RFO, not to a date before then."

Anne agrees that the 2016 order "did not specify a distinctive [*Ostler/Smith*] order for 2018 forward." However, she asserts the trial court made the reasonable interpretation that the *Ostler/Smith* "allocation for 2017 would remain in place thereafter until otherwise modified or superseded."

Family Code section 3653, subdivision (a), allows a support order to be modified or terminated "retroactive to the date of the filing of the notice of motion or order to show cause to modify or terminate, or to any subsequent date." (Fam. Code, § 3653, subd. (a).) "A court order modifying support retroactive to any time period before the filing date of a modification motion would thus violate the governing statutory scheme. Such an act, moreover, would be in excess of the court's jurisdiction." (*Stover v. Bruntz* (2017) 12

---

[21] Regarding retroactive modification, we note that Tom also asserts that the trial court engaged in a prohibited retroactive modification when it declared the 2013 judgment unenforceable. We do not address this argument, as we agree with Tom as to his alternate argument that the trial court violated the principal that one judge may not overrule another.

22

Cal.App.5th 19, 26, italics omitted.) "There are no facts in dispute. As the issue presented here is a pure question of law, we review it de novo." (*S.C. v. G.S.* (2019) 38 Cal.App.5th 591, 598.)

Based on our independent review of the record and relevant orders, we do not agree with Tom that the trial court erred when it found an ongoing *Ostler/Smith* obligation in 2018 and forward. Tom is correct that the 2016 order delineated the *Ostler/Smith* obligations by specific time periods (i.e., 2016 and 2017) and did not address 2018. However, as the court recognized, the 2016 order referred back to prior orders when it stated that all orders "remain in full force and effect except as specifically modified below." ~(AA121 [order]; RT 1098; RB 30)~ The 2015 order in turn generally stated there was an *Ostler/Smith* obligation for "January 1, 2014 *forward*" (italics added) and that Tom shall pay Anne 8.9 percent of income in excess of $18,298 of monthly income from all sources as additional child support.

Regarding the percentage figure, the more recent order (2016 order) utilized a slightly higher percentage (9.1 percent) than the 2015 order. The trial court stated the 2016 order thus "amended" the percentage figure. We see no error in that interpretation.

Accordingly, harmonizing the 2015 and 2016 orders, the trial court reasonably found that the *Ostler/Smith* payment obligations continued past 2017 and the obligations were subject to the percentage stated in the 2016 order (i.e., 9.1 percent). We are mindful that when a court order is "susceptible 'to two interpretations, the court should give the construction that will make the [writing] lawful, operative, definite, reasonable and capable of being carried into effect and avoid an interpretation which will make the [writing] extraordinary, harsh, unjust, inequitable or which would result in absurdity.' " (*Falcone & Fyke*, *supra*, 203 Cal.App.4th at p. 989.) We reject Tom's contention that the trial court's enforcement of a 2018 *Ostler/Smith* obligation based on prior court orders constituted an impermissible retroactive modification of his support obligation.

####    4.    Directions on Remand

Having determined the trial court erred (see part II.B.2., *ante*), we reverse the August 27, 2021 order and remand this matter to the trial court for further proceedings as to Anne's March 2020 RFO. As Tom's challenge addresses only the 2018 *Ostler/Smith* payment to Anne in the August 27, 2021 order, we make no determinations as to the other issues addressed in that order.

On remand, we direct the trial court to recalculate the 2018 *Ostler/Smith* payment owed by Tom in additional child support. It may rely on the evidence taken at the June 2021 trial, including as to Tom's 2018 income. However, in recalculating Tom's *Ostler/Smith* obligation for 2018, the trial court may not adopt Butera's calculation (i.e., scenario 2) that included *all* of the capital gain proceeds Tom received from the sale of Streamline as income in its *Ostler/Smith* calculation for 2018. Those proceeds from the sale of his capital asset were excluded by the 2013 judgment, which language remained in effect at the time of the hearing on Anne's RFO.

On the other hand, the record reflects Tom had income separate from the capital gain proceeds (namely, over $500,000 he made in wages in 2018). We observe that Butera, Tom's accounting expert, supplied a calculation that took into account just those wages as income and determined Tom owed Anne a specified sum of approximately $22,000 as a 2018 *Ostler/Smith* payment. On remand, the trial court may further conclude other sources of income (other than those excluded by the 2013 judgment) are appropriate to include in the 2018 calculation. We leave those determinations to the trial court in the first instance.

Moreover, we note that Tom consented in the trial court to "a new child support guideline amount being calculated", and Tom agrees that this calculation may include a reasonable rate of return on his (and Anne's) assets. Tom asserts that "[a]ny future modification can certainly consider income which can be imputed to the proceeds," citing to *County of Kern v. Castle* (1999) 75 Cal.App.4th 1442. Nevertheless, we decline

24

Tom's request that we address modification of support in this appeal. Anne did not present the issue of modification at the time of trial in June 2021, and the trial court expressly stated it was not considering a request for modification. We express no further opinion on how the trial court should otherwise address Anne's RFO, and it may consider additional evidence and make additional findings as necessary to determine the child support obligations for each party.

## III. DISPOSITION

The August 27, 2021 order is reversed and the matter is remanded with directions to redetermine the *Ostler/Smith* payment owed by Tom to Anne for 2018 in accordance with the views expressed herein. The parties shall bear their own costs on appeal.

_____

                                              Danner, J.

WE CONCUR:

_____

Bamattre-Manoukian,  Acting P.J.

_____

Wilson, J.

**H049462**
*Doslak v. Disse*